# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE RITESCREEN COMPANY, LLC, | : | Civil No. 1:23-CV-00778 |
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. WHITE and FLEXSCREEN LLC, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion filed by Plaintiff, The RiteScreen Company, LLC ("RiteScreen"), to dismiss the counterclaim raised by Defendant FlexScreen LLC ("FlexScreen"). (Doc. 40.) For the reasons provided herein, the court will grant Plaintiff's motion.

### BACKGROUND[1]

This lawsuit was brought by RiteScreen to remedy allegedly ongoing harms caused by a former employee, Defendant Michael J. White ("White"), and his new employer, Defendant FlexScreen LLC ("FlexScreen"). On May 10, 2023, RiteScreen filed the instant lawsuit alleging claims for violation of the Defend Trade Secrets Act ("DTSA") (Count I), violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA") (Count II), breach of contract against White only

---

[1] Because the court is writing for the benefit of the parties, only the necessary information is included in this Background section. Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this memorandum.

1

(Count III), tortious interference with contract against FlexScreen only (Count IV), breach of fiduciary duty against White only (Count V), civil conspiracy (Count VI), unjust enrichment (Count VII), and unfair competition (Count VIII). (Doc. 1.)

On May 16, 2023, the court granted RiteScreen's motion for a temporary restraining order ("TRO"). (Doc. 24.) According to the terms of the TRO, certain provisions would take effect once RiteScreen posted a security bond. (*Id.* at 14.)[2] That bond was posted on June 13, 2023. (Doc. 34.)

On June 9, 2023, FlexScreen filed its verified answer with affirmative defenses and counterclaims. (Doc. 30.) FlexScreen alleges that, on "the morning of May 30, 2023, RiteScreen issued a mass e-mail and social media communication entitled 'An important update for RiteScreen Customers.'" (*Id.* ¶ 148.) That communication attached a copy of RiteScreen's complaint and the TRO. (*Id.*) FlexScreen believes that the May 30 communication went "to the entire window and door screen industry potential customer base, including existing and potential FlexScreen customers, some who FlexScreen believes are not current customers of RiteScreen." (*Id.* ¶ 149.)

FlexScreen alleges that the communication included false and misleading statements about FlexScreen, "as it involves the litigation and allegations contained

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

in the Verified Complaint." (*Id.* ¶ 150.) Specifically, FlexScreen alleges the following:

- The Communication states the TRO was issued against the Defendants *"following violations of certain agreements and the theft of proprietary RiteScreen information and customer data."* Although the Court has not made any final determination that any agreements have been violated or that such theft occurred. This statement misleads third parties to believing such determinations have been made and suggests that FlexScreen was a party to such agreements to which it is not party.

- The Communication also states that FlexScreen "*chose not to honor our requests to act in accordance with the agreement we have with our former employee and failed to assist in assessing the data breach.*" Which is false and misleading in several respects.

- RiteScreen did not attach any of the exhibits to the Complaint including letters on behalf of FlexScreen consistently stating FlexScreen's position on these issues including its position on the validity of the non-compete and FlexScreen's position that it did not have or want any of the alleged RiteScreen information and would work with RiteScreen to have it returned in the event it somehow got onto the FlexScreen computer system.

- The Communication repeatedly improperly suggests the FlexScreen has "stolen" RiteScreen information and is "abusing" such alleged information when no basis in fact exists for such a statement. On the contrary, FlexScreen has assured itself it is not in any way using such alleged information and Mr. White has not worked for FlexScreen since the TRO issued.

- Finally, the Communication suggests the TRO was valid and in effect at the time the Communication was issued when in fact it was not in effect as all condition[s] of the TRO were not met, specifically RiteScreen cavalierly never posted a bond as required to make the TRO have force and effect. As a result, the TRO was not in effect but this communication suggests otherwise.

3

(*Id.*)

FlexScreen alleges that RiteScreen's communication gives rise to two counterclaims. In the first (Counterclaim I), FlexScreen alleges business disparagement and commercial defamation.[3] (Doc. 30, p. 18.) In the second (Counterclaim II), FlexScreen alleges tortious interference with existing and prospective contractual relationships. (*Id.* at 20.) RiteScreen argues that both causes of action should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 41, pp. 9–17.)

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint

---

[3] These are actually two distinct causes of action. *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 408 (E.D. Pa. 1983).

proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## DISCUSSION

### A. FlexScreen fails to state a claim for commercial disparagement or defamation

#### 1. Commercial disparagement

To state a commercial disparagement claim under Pennsylvania law, a plaintiff must allege the following: "1) that the disparaging statement of fact is untrue or that the disparaging statement of opinion is incorrect; 2) that no privilege attaches to the statement; and 3) that the plaintiff suffered a direct pecuniary loss as the result of the disparagement." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 579 (E.D. Pa. 1999), *aff'd sub nom*, 229 F.3d 1139 (3d Cir. 2000).

Regarding the commercial disparagement claim, RiteScreen points out that, under Pennsylvania law, a "disparaging statement is one which the publisher intends should be understood, or which the recipient reasonably should understand as tending to cast doubt upon the quality of another's land, chattels or intangible things." *Synygy*, 51 F. Supp. 2d at 579. In essence, under Pennsylvania law, disparaging statements can only raise a cause of action for commercial disparagement where they address the quality of a plaintiff's goods or services.

*Unisource Worldwide, Inc. v. Heller*, No. CIV. A. 990266, 1999 WL 374180 (E.D. Pa. June 9, 1999).

FlexScreen does not address this argument squarely. Instead, it addresses the argument in passing in a footnote. (Doc. 48, p. 8 n.2.) FlexScreen cites no specific language of RiteScreen to show that its communication addressed the quality of goods or services that FlexScreen provides. (*Id.*) Instead, it merely asserts that RiteScreen's communication "demeans FlexScreen's character in the Communication, [and] also implies that FlexScreen may not be able to deliver on its products as a result of the lawsuit and TRO and that FlexScreen does not have adequate services." (*Id.*)

FlexScreen has waived its arguments as to this claim. In the Third Circuit, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). Because FlexScreen has waived its argument for commercial disparagement, the court will dismiss this claim.

### 2. Defamation

A plaintiff raising a claim for defamation under Pennsylvania must plead the following:

> (1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the

> plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion.

*I.M. Wilson*, 500 F. Supp. 3d at 422–23 (quoting 42 Pa. Cons. Stat. § 8343).

RiteScreen argues that, because its statements were fair reports of the instant lawsuit, they cannot constitute defamatory communications. (Doc. 41, p. 12.) Instead, "[o]ut-of-court statements made by parties to a proceeding enjoy a qualified privilege provided those statements are a fair and accurate report of statements made or pleadings filed in the proceeding and the individual does not make his report with the sole purpose of causing harm to the person defamed." *I.M. Wilson*, 500 F. Supp. 3d at 423 (cleaned up).

RiteScreen argues that the present situation is similar to *I.M. Wilson*, where the court held that a party's one-page summary of its complaint and motion for preliminary injunction were not made "for the sole purpose" of harming its counterpart. *Id.* at 423–24. RiteScreen also faults FlexScreen's claim insofar as it rests on the fact that the communication suggests that the TRO was valid and in effect despite no bond having been posted. (Doc. 41, p. 16.) It points out that courts within this circuit have held that similar arguments are not persuasive. (*Id.*) Indeed, the court in *I.M. Wilson* addressed and rejected the same argument FlexScreen raises in this respect. 500 F. Supp. 3d at 424.

8

FlexScreen counters that RiteScreen's communication is not protected by fair reporting privilege. (Doc. 48, pp. 5–6.)[4] FlexScreen argues that "[i]f the reader could conclude that the [allegedly defamatory publication] carries with it a materially greater 'sting,' then the fair report privilege has been abused and is thus forfeited." (*Id.* at 6–7 (quoting *Wilson v. Slatalla*, 970 F. Supp. 405, 418 (E.D. Pa. 1997)).) Such is the case here, FlexScreen argues, for three reasons. (*Id.* at 7–8.)

The first is that, at the time of the communication, the TRO had not gone into effect, because RiteScreen had yet not posted a bond, and the court had made no findings of fact. (*Id.* at 7.) Second, the communication includes false statements, such as (a) that the TRO was issued due to "violations of certain agreements and the theft of" proprietary "'information and customer data' without any qualifiers," (b) that FlexScreen chose not to honor RiteScreen's request to act in accordance with RiteScreen's agreement with White, and (c) that FlexScreen failed to assist RiteScreen in assessing the data breach. (*Id.*) Third, the communication falsely states that FlexScreen "has 'stolen' RiteScreen information and is 'abusing' such alleged information when no basis in fact exists for an allegation." (*Id.*)

---

[4] FlexScreen also asserts that RiteScreen's reliance on *I.M. Wilson* is mistaken, implying that RiteScreen has misquoted the case. (Doc. 48, p. 6 n.1.) FlexScreen asserts, without explanation, that "the plain language in those opinions does not support that interpretation." (*Id.*) Upon review, the court finds that RiteScreen's quotation is correct. So, too, are its representation of the facts and holding of *I.M. Wilson* and the other cases it cites.

FlexScreen's arguments fail. Regarding the first, RiteScreen was accurate in communicating that this court had entered the TRO and mentioning some of the TRO's pertinent terms. This accuracy is not changed by the fact that, at the time of its communication, RiteScreen had not yet posted the bond that was required for the TRO to have legal effect. *I.M. Wilson*, 500 F. Supp. 3d at 424. FlexScreen argues to the contrary, but without any authority to support its position. But, as RiteScreen points out, FlexScreen stipulated to abiding by the terms of the TRO even before RiteScreen posted its security bond. (Doc. 26, p. 8; Doc. 49, p. 5.) Even without this stipulation, RiteScreen's references were fair reporting. The fact that the court had not yet made findings of fact is not material.

Regarding FlexScreen's second argument, the communication was likewise fair and accurate. In its communication, RiteScreen represented its position that the TRO was issued due to violations in RiteScreen's agreements and theft of its proprietary property. It further alleged that FlexScreen had declined to honor the contracts that RiteScreen sought to vindicate. That is the position that RiteScreen expressed in its complaint, and RiteScreen's claims in this suit formed the basis of the TRO. FlexScreen implies that RiteScreen was obligated to include "qualifiers," presumably to ensure that readers understood that any alleged "theft" of RiteScreen's information was due to White's conduct and not that of FlexScreen. The court does not find that RiteScreen's communication provided

10

exaggerated additions or embellishments.  RiteScreen's communication does not carry a materially greater sting than its complaint, which was attached to the communication.  (Doc. 30, ¶ 150; Doc. 30-2.)  The same is true with respect to RiteScreen's allegations that FlexScreen failed to assist RiteScreen in assessing its data breach.

As in *I.M. Wilson*, there appears to be no love lost between the two companies.  But that does not mean that RiteScreen's communication went beyond the bounds of the fair-reporting exception.  RiteScreen's communication reiterated the same allegations from its publicly-filed complaint and motion for TRO.  The TRO was issued due to alleged violations of RiteScreen's covenant and confidentiality agreements with White.  Therefore, as stated in RiteScreen's communication, the TRO was issued due to RiteScreen's allegations of "violations of certain agreements and the theft of" proprietary information and customer data.

As alleged in RiteScreen's complaint and supported in the exhibits attached therein, RiteScreen contacted FlexScreen and put it on notice that White's employment with FlexScreen may be in violation of his contract with RiteScreen.  (Doc. 1, ¶ 40; Doc. 1-4.)  RiteScreen further alleged, and provided exhibits to support, that FlexScreen failed to meaningfully respond to RiteScreen's allegations.  (Doc. 1, ¶ 41–42; Doc. 1-6.)  RiteScreen demanded that FlexScreen cease and desist in employing White.  (Doc. 1-4.)  Instead of doing so, FlexScreen

11

pointed out what it perceived to be deficiencies in RiteScreen's contract, which could make the purported agreements unenforceable. (Doc. 1-6.) In short, RiteScreen's communication, as addressed by FlexScreen's first and second arguments, cannot form the basis of a defamation counterclaim. They constitute fair reporting.

Lastly, FlexScreen argues that RiteScreen's communication "falsely states that FlexScreen has 'stolen' RiteScreen information and is 'abusing' such alleged information," though no basis of fact exists for such an allegation. (Doc. 48, p. 7.) In making this argument, FlexScreen does not rely on the language of RiteScreen's communication—instead, it relies on the conclusory assertions and legal conclusions from its counterclaims. The reason for this is understandable; RiteScreen's communication does not plausibly support FlexScreen's claims. RiteScreen argues that FlexScreen is trying to plead defamation by innuendo. (Doc. 41, pp. 12–13.) But, it argues, FlexScreen has failed to meet the operative standard under *Livingston v. Murray*, 612 A.2d 443 (Pa. Super. Ct. 1992). (*Id.*) FlexScreen does not respond to this argument, so the court deems FlexScreen to have waived it. For the foregoing reasons, the court will dismiss Count I insofar as it raises a claim for defamation.

### B. FlexScreen fails to state a claim for tortious interference with existing and prospective contractual relationships

Under Pennsylvania law, there are four prongs to a claim of intentional interference with prospective contractual relations: "(1) a prospective contractual relation [exists]; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173,184 (3d Cir. 1997). RiteScreen asserts that FlexScreen's pleadings fail to meet the first two prongs. (Doc. 41, p. 18.)

Regarding the first prong, a prospective or existing contractual relationship must be "of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss." *Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275 n.14 (Pa. Super. Ct. 2012). RiteScreen points out that when the basis for the claim is an existing relationship, a plaintiff must specify the relationship with "definite, exacting identification." (Doc. 41, p. 19 (quoting *Kelly-Springfield Tire Co. v. D'Ambro*, 596 A.2d 867, 872 (Pa. Super. Ct. 1991)).) FlexScreen has provided no such identification. (*Id.*) Nor has it pleaded sufficient facts to allege interference of prospective relations, according to RiteScreen. (*Id.* at 20.)

13

FlexScreen counters that, at this stage, it need not list the prospective business relationships with which RiteScreen interfered. (Doc. 48, p. 10–11 (citing *Kachmar*, 109 F.3d at 184; *Wurth Baer Supply Co. v. Strouse*, 627 F. Supp. 3d 422 (M.D. Pa. Sep. 9, 2022); *E. Frank Hopkins Seafood, Co., Inc. v. Olizi*, No. 2:17-CV-01558, 2017 WL 2619000 (E.D. Pa. June 16, 2017); Aetna*, Inc. v. Health Diagnostic Lab. Inc.*, No. 15-1868, 2015 WL 9460072, at *6 (E.D. Pa. Dec. 28, 2015).)

FlexScreen is correct insofar as it is not required to produce a list of company names at this stage. But, as RiteScreen correctly points out in its reply, each case on which FlexScreen relies is meaningfully distinct from this case. (Doc. 49, pp. 7–9.) In *Kachmar*, the issue was not the identification of a contractual counterparty but whether the relationship had progressed to the point of being a valid prospect. 109 F.3d at 184–85. In *Aetna*, the plaintiff provided extensive details about the contracts that were impacted including the pertinent terms. 2015 WL 9460072, at *6.

FlexScreen has made no such substantial or particular allegations as to its impacted contractual relations. Instead, it has made vague and conclusory statements about the existence of existing and prospective relationships and how they were impacted. (Doc. 30, ¶ 165.) Additionally, in the other cases on which FlexScreen relies, the plaintiffs had provided details about the specific contractual

relationships with which defendants had interfered. *See Wurth*, 627 F. Supp. 3d at 436 (denying dismissal of tortious interference because plaintiff had provided details about the allegedly affected contractual relations, identifying customers by specific details and identifiers other than their names); *Olizi* 2017 WL 261900, at *5 (denying motion to dismiss where plaintiff pleaded the existence of specific customers who, enticed by defendant with specific confidential information, were induced to contract with defendant instead of plaintiff). Plaintiffs in each of these cases provided far more detailed allegations than FlexScreen has provided in this case.

FlexScreen has not adequately pleaded any substance or particularity with respect to current or prospective contractual relations with which RiteScreen allegedly interfered. Instead, FlexScreen's allegations read as a succinct statement primarily consisting of legal conclusions. Because FlexScreen has not met the pleading standard, the court will dismiss this count.

## Conclusion

For the reasons stated herein, the court will dismiss FlexScreen's counterclaims without prejudice. An appropriate order will follow.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: February 6, 2024